IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DELROY CLARKE HARRISON,**                :       **CIVIL NO. 1:CV-05-1376**
                                            :
**Plaintiff**                               :
                                            :
**v.**                                      :
                                            :
**THOMAS HOGAN, Warden;**                   :
**THOMAS DECKER, Director of**              :
**the Bureau of Immigration and**           :
**Customs Enforcement,**                    :
                                            :
**Defendant**                               :
                                            :

**M E M O R A N D U M**

Before the court is Petitioner Harrison's petition for writ of habeas

corpus filed *pro se* under 28 U.S.C. § 2241.  (Doc. 1.)  Petitioner, who is an alien

subject to a reinstated order of deportation, asserts that his continued detention

violates the Due Process Clause of the Fifth Amendment.  The parties have briefed

the issues, and the matter is ripe for disposition.

**I.**          **Background**

Petitioner is a native and citizen of Jamaica.  He entered the United

States as a lawful permanent resident in or around November 1985.  Following three

drug-related criminal convictions in various state courts, on April 1, 1994, an

immigration judge in Oakdale, Louisiana found Petitioner deportable under §§

241(a)(2)(A)(iii) and 241(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"),

codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i) respectively.  Section

241(a)(2)(A)(iii) relates to aliens convicted of an aggravated felony, and §

241(a)(2)(B)(i) relates to aliens convicted under a state's controlled substances law,

among other things.  On July 20, 1994, Petitioner was removed from the United States.

Petitioner reentered the United States in or around February 1996, and on December 30, 1996, he was convicted of illegal reentry in the United States District Court for the Eastern District of Pennsylvania.  On May 12, 1997, the Immigration and Naturalization Service ("INS") reinstated Petitioner's April 1994 order of deportation pursuant to § 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5).[1]

Petitioner filed a petition for a writ of habeas corpus with this court on February 3, 2005 under a separate caption.  *See Harrison v. Dep't of Justice*, docketed at No. 1:CV-05-0141.  In that petition, Petitioner challenged his underlying order of deportation.  Petitioner filed an emergency motion for stay of deportation in that proceeding, which the court granted on January 21, 2005.  On August 10, 2005, the court transferred the case docketed at No. 1:CV-05-0141 to the Fifth Circuit in accordance with the Real ID Act of 2005, Pub. L. No. 109-13, § 106(c), 119 Stat. 231, 311 (May 11, 2005).[2]  The stay remained in place upon transfer.

Petitioner filed a second petition for writ of habeas corpus under the above caption on July 8, 2005.  In this petition, Petitioner challenges the permissibility

---

[1]On March 1, 2003, the INS was transferred from the United States Department of Justice into the United States Department of Homeland Security.  The INS was abolished and its functions were divided into three different bureaus: the Bureau of Customs and Border Protection; the Bureau of Immigration and Customs Enforcement; and the Bureau of Citizenship and Immigration Services.

[2]The Real ID Act provides that a case brought under § 2241 challenging a final order of removal, deportation, or exclusion that is pending in a district court as of the date of enactment of the Act shall be transferred to the court of appeals for the circuit in which a petition for review could have been properly filed.

of his continued detention.[3]  After Petitioner served his sentence for illegal reentry, he

was transferred to the custody of the Bureau of Immigration and Customs

Enforcement ("ICE") on or around December 20, 2004.  On February 11, 2005,

Petitioner was provided with notice of a file custody review.  (Pet. Writ Habeas

Corpus, Ex. A.)  That review was conducted on March 9, 2005, and in the review,

the reviewing officer noted that Petitioner was scheduled for removal on January 29,

2005, but that such removal was stayed by this court's January 21, 2005 order.

(Gov't Resp. Writ Habeas Corpus, Ex. C, Post-Order Custody Review Worksheet

at 4, 7.)

On March 21, 2005, the Acting Field Office Director of the Philadelphia

Field Office, Thomas Decker, decided that Petitioner would not be released from

ICE custody.  In his Decision to Continue Detention, Mr. Decker provided the

following justification for his decision:

> *You will not be released from ICE custody because your*
> *reentry in the United States has shown that you would*
> *pose a risk of flight if released.  You have demonstrated*
> *through your firearms conviction that you continue to pose*
> *a threat to the community.  Your Embassy was willing to*
> *issue a travel document and your removal was imminent*
> *except that you were granted a stay of removal.*

(Gov't Resp. Writ Habeas Corpus, Ex. C, Decision to Continue Detention at 1.)  Mr.

Decker's decision went on to explain that

> [a] stay has been granted in your case.  If your stay has not
> been lifted within one year, you will be scheduled for a
> Post-Order Custody Review (POCR) and served with a
> Notice to Alien of File Custody Review.  If your stay is
> lifted and ICE does not effect your removal prior to the

---

[3]Because Petitioner does not challenge his final order of removal, deportation, or exclusion in this petition, this court has jurisdiction under the Real ID Act to hear Petitioner's claims regarding continued detention.

> 90th day following the lifting of the stay, a new POCR will
> be conducted.

(*Id.*)

## II.        <u>Discussion</u>

Petitioner argues that his petition for a writ of habeas corpus should be granted because his continued detention is impermissible under the Due Process Clause of the Fifth Amendment.  In support of his argument, Petitioner relies in large part on the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  This 90-day period is known as the "removal period."  *Id*.  The removal period begins on the latest of the following: (1) the date the order of removal becomes administratively final, (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order, or (3) if the alien is detained or confined, the date the alien is released from detention or confinement.  *Id*. § 1231(a)(1)(B).  If the alien does not leave or is not removed during the removal period, the alien is released pending removal, but subject to supervision.  *Id*. § 1231(a)(3).  Under certain circumstances, however, the alien may be detained beyond the removal period.  *Id*. § 1231(a)(6).

In *Zadvydas*, the Supreme Court examined "whether [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal."  533 U.S. at 682.  The Supreme Court held that "once removal is no longer reasonably foreseeable," continued detention is constitutionally impermissible.  *Id*. at

699.  In order to promote the uniform administration of this rule in federal courts, the Supreme Court concluded that 6 months was a presumptively reasonable period of detention.  *Id.* at 701.  After the 6-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*.

The Government asserts that Petitioner's continued detention is consistent with the requirements of *Zadvydas*.  The Government argues that the 6-month presumptive period has not lapsed.  In the alternative, the Government contends that even if the court finds that the 6-month period has expired, there is a significant likelihood of removal once the stay in this case is lifted in light of the fact that Petitioner had already been scheduled for removal before the stay was issued.

A determination on the merits of the Government's arguments is not necessary to resolve the instant matter.  Because a stay has been issued in this case, the traditional *Zadvydas* analysis is no longer applicable.  For instance, the removal period has not yet even begun.  8 U.S.C. § 1231(a)(1)(B)(ii); *see also Haynes v. Dep't of Homeland Security*, No. 3:CV-05-0339, slip op. at 7 (M.D. Pa. July 8, 2005) (Attachment A).  The issue in *Zadvydas* was whether detention was permissible *beyond* the removal period.  533 U.S. at 682.  Further, a determination on whether there is a significant likelihood that the Government will secure Petitioner's removal in the reasonably foreseeable future is not possible.  The timing of Petitioner's removal is out of the Government's hands at this point pending resolution of the judicial proceedings.  Instead, the precise issue in this case was nicely defined in an opinion relied on by Petitioner in his reply brief – "whether the

due process clause of the Fifth Amendment requires that a criminal alien be afforded an opportunity to be heard on the question of conditional release pending judicial review of an administrative removal order, the execution of which has been stayed by judicial order." *Haynes*, No. 3:CV-05-0339, slip op. at 8.  For the reasons set forth below, the court concludes that the Fifth Amendment requires such review.

The Supreme Court has "repeatedly recognized" that an alien who is a lawful permanent resident of the United States and physically present here is entitled to the protections of the Due Process Clause.  *Tineo v. Ashcroft*, 350 F.3d 382, 398 (3d Cir. 2003).  In *Zadvydas*, the Supreme Court noted that "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects."  533 U.S. at 690.  The Third Circuit has held that

> [w]hen detention [of an alien] is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable.  The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category.  Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

*Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999).[4]

The fact that a stay of removal has been issued does not change this result.  The Sixth Circuit has concluded that

> [a]n alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.  Further, although an alien may be responsible for

---

[4]In *Ngo*, the Third Circuit limited its holding to excludable aliens.  192 F.3d at 398 n.7.  This court, however, finds that the principles expressed in that opinion are equally applicable to the instant matter.

> seeking relief, he is not responsible for the amount of time
> that such determinations may take.

*Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003); *see also Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004) ("The price for securing a stay of removal should not be [indefinite detention]."). In short, "where an alien has satisfied the requirements for securing a stay of removal, detention must be justified by facts showing a flight risk or danger to the community." *Lawson v. Gerlinski*, 332 F. Supp. 2d 735, 746 (M.D. Pa. 2004).

Having determined that Petitioner is protected by the Due Process Clause, the question becomes to what review is Petitioner entitled. On this issue, the court finds the Third Circuit's decision in *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390 (3d Cir. 1999) instructive. In *Ngo*, the Third Circuit examined a set of rules on post-order custody reviews that had been issued by the Department of Justice on August 6, 1999. 192 F.3d at 399, 399 n.8. These rules provided for (1) advance written notice to the alien of an opportunity to present information supporting release, (2) the right to representation by counsel or other individuals, (3) the opportunity for an annual personal interview, (4) written explanations for a custody decision, (5) the opportunity for administrative review of the custody decision, (6) reviews every six months, and (7) a refusal to presume continued detention based on criminal history. *Id*. at 399. The Third Circuit determined that these provisions, if "conscientiously applied, . . . provide[d] reasonable assurance of fair consideration of a petitioner's application for parole pending removal." *Id*.

Although the rules analyzed by the Third Circuit in *Ngo* are no longer in force, *see* 8 C.F.R. § 241.4, this court finds that the seven elements listed above provide guiding principles by which to measure the current review procedures, which

are outlined at 8 C.F.R. § 241.4. Whether the current provisions pass constitutional muster, however, is not necessary for the court to address to resolve the instant matter.[5] Petitioner received a review on March 21, 2005. The principles described in *Ngo* contemplated reviews every six months. 192 F.3d at 399. Petitioner, therefore, is not entitled to review until September 2005. Accordingly, the court concludes that Petitioner's detention is not constitutionally impermissible at this point.

In *Haynes*, Chief Judge Vanaskie reached the opposite conclusion and ordered the petitioner's release unless an appropriate review was conducted within 60 days of his decision. *Haynes*, No. 3:CV-05-0339, slip op. at 12-13. In *Haynes*, however, nearly nine months had passed since the petitioner received a records review. *Id*. at 4. Under those circumstances, this court agrees that an alien in continued detention and subject to a stay of removal would be entitled to review.

In light of the foregoing, the court will deny Petitioner's habeas petition; however, the court will deny the petition without prejudice to allow Petitioner to re-assert his claims regarding continued detention if the Government does not provide Petitioner adequate due process in the future. In the Decision to Continue Detention issued on March 21, 2005, Mr. Decker noted that "[i]f your stay has not been lifted within one year, you will be scheduled for a Post-Order Custody review . . . and served with a Notice to Alien of File Custody Review." (Gov't Resp. Writ Habeas Corpus, Ex. C, Decision to Continue Detention at 1.) Whether the timing or amount

---

[5]The court notes that in *Haynes v. Department of Homeland Security*, No. 3:CV-05-0339, slip op. at 11 (M.D. Pa. July 8, 2005), Chief Judge Vanaskie concluded that the procedures set forth in 8 C.F.R. § 241.4(i), which govern post-removal order release determinations for aliens who have not been removed within three months after an initial records review, closely approximated the principles of *Ngo*. Although such procedures appear to satisfy many of the *Ngo* principles, Chief Judge Vanaskie did not have occasion to address whether the frequency of the review provided in § 241.4(i) is sufficient to comport with due process. *See* 8 C.F.R. § 241.4(k).

of such review will be sufficient to comply with due process principles is an issue for another day.  The court cannot render a decision on the constitutionality of events to which Petitioner is not yet entitled.  The Government, however, should be on notice of this court's view that the principles in *Ngo* provide an analytical framework by which to measure the adequacy of the current review provisions.  To the extent the current review provisions do not square with the principles in *Ngo*, the Government may, of course, argue in the future that the new rules nevertheless satisfy due process concerns.  For now, the court will deny Petitioner's habeas petition.[6]

**III.**         **Conclusion**

         In accordance with the foregoing discussion, the court will deny Petitioner's habeas petition without prejudice.  An appropriate order will issue.

                                         s/Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge

Dated:  August 18, 2005.

---

[6]In his briefs, Petitioner also raises arguments based on equitable estoppel, *res judicata*, and equal protection.  Having reviewed these arguments, the court finds that they do not apply to the instant matter and are not a basis on which to grant Petitioner's habeas petition.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DELROY CLARKE HARRISON,**        :        **CIVIL NO. 1:CV-05-1376**
                                   :
**Plaintiff**                      :
                                   :
**v.**                             :
                                   :
**THOMAS HOGAN, Warden;**          :
**THOMAS DECKER, Director of**     :
**the Bureau of Immigration and**  :
**Customs Enforcement,**           :
                                   :
**Defendant**                      :

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS**

**HEREBY ORDERED THAT**:

1) Petitioner Harrison's petition for a writ of habeas corpus (Doc. 1) is

**DENIED** without prejudice.

2) The Clerk of Court shall close the case file.


                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  August 18, 2005.